**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DOUG TRAHER,** : | |
| : | |
| **Plaintiff,** : | **No. 19-cv-01202-GAM** |
| : | |
| **v.** : | |
| : | |
| **REPUBLIC FIRST BANCORP, INC.,** : | |
| : | |
| **Defendant.** : | |

### Reply Memorandum of Law in Support of Defendant's Motion to Dismiss

## I.  There is No Breach of Contract

The parties are in agreement the no Pennsylvania case or statute recognizes or creates a right of action for a claim by a shareholder for breach of a corporation's articles.  That is, *no Pennsylvania case exists, and Plaintiff has cited none, recognizing or permitting to go forward a shareholder claim for breach of a corporation's articles of incorporation.*

In response, Plaintiff references case law in which courts have noted that articles of incorporation have been viewed as contracts.  But there is a difference between a court looking at a corporation's articles as a contract, for example, for purposes of applying contractual rules of interpretation in interpreting those articles, and a court viewing a corporation's articles as a contract as a basis upon which a shareholder can bring a claim of breach.  Thus, while many of the cases Plaintiff cites bring contractual interpretive rules to bear in reading articles of incorporation, they do *not* permit (or even discuss) a shareholder suit for breach.  *See Nat'l Bd. of Examiners for Osteopathic Physicians & Surgeons, Inc. v. Am. Osteopathic Ass'n*, 645 N.E.2d 608, 617 (Ind. Ct. App. 1994) (stating "[t]hat a corporation's organizational documents constitute a contract is a fundamental principle of all corporate law," but only to go on to decide that,

"[w]hen determining what rights are created by corporate organizational documents, Indiana courts have routinely applied the general rules governing contract interpretation and enforcement"); *Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 367 & n.10 (3d Cir. 2014) (remarking that "[t]he proposition that by-laws are a contract among certain stakeholders is not novel or controversial" only in the context of deciding if the contractual interpretive "doctrine of contra proferentem" should apply); *Coury v. Moss*, 529 F.3d 579, 585 (5th Cir. 2008) (noting that "[u]nder Louisiana law, articles of incorporation are a contract between the corporation and its shareholders," but only to establish that "they are to be construed according to the rules found in . . . Interpretations of Contracts, of the Louisiana Civil Code.").  This includes the Pennsylvania case *In re Estate of Hall*, 731, A.2d 617, 623 (Pa. Super. 1999) (noting that "[c]orporate charters and by-laws are contracts among shareholders of a corporation," but only to apply "general rules of contract interpretation").  *In none of these cases was the question whether a shareholder could bring a claim for breach of a corporation's articles even remotely before the court*.

Thus, the broad, categorical language Plaintiff employs on courts' recognition of a corporation's articles as contractual in nature says nothing about whether a shareholder can sue for breach of such articles.  Indeed, in addition to the four cases above that Plaintiff cites which merely view articles of incorporation as contracts in interpreting them, four of the other cases Plaintiff cites also reference the contractual nature of a corporation's articles but also say nothing whatsoever about a shareholder claim for breach.  *See Berger v. Amana Soc.*, 95 N.W.2d 909, 911 (Iowa 1959); *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518 (1819); *Lawson v. Household Fin. Corp.*, 152 A. 723, 724 (Del. Ch. 1930); *In re St. Mary's Church*, 1822 WL 1868, at *30 (Pa. 1822).  All of which is to say that the "unbroken line of cases" that Plaintiff

touts, and Plaintiff's claim that "every court in the country that has considered the question has agreed," all establish nothing more than courts' recognition that there are contractual aspects to a corporation's articles of incorporation.  *But none of these cases addresses in any manner whether a shareholder can bring a claim against a corporation for breach of its articles.*

Indeed, Plaintiff cites only two cases – neither from Pennsylvania nor applying Pennsylvania law – which permit a shareholder to bring suit for breach of articles.  *In re Activision Blizzard, Inc. Stockholder Litig.*, 124 A.3d 1025, 1050 (Del. Ch. 2015); *Chokel v. Genzyme Corp.*, 449 Mass. 272, 273, 867 N.E.2d 325, 327 (2007).  This is a far cry from an "unbroken line of cases" recognizing the claims Plaintiff purports to bring or the universal support Plaintiff claims exists.  And, to repeat and importantly, this is not a cause of action that Pennsylvania has recognized.  This Court should reject Plaintiff's irrelevant hyperbole and decline his invitation to create a new Pennsylvania cause of action whose acceptance outside the Commonwealth is far from universal.

Undeterred, Plaintiff claims the error in the Proxy Statement breached the covenant of good faith and fair dealing.  But there is even less support for a claim by a shareholder against a corporation for alleged breach of the covenant of good faith and fair dealing in connection with a corporation's articles.[1]  No such Pennsylvania authority exists.

Regardless, the bottom line is that there was a misstatement in the proxy discussing how the votes for proposal 2 would be tallied, but all governing rules (as set forth in Republic's Articles, its By-Laws, and Pennsylvania law) were adhered to in counting those votes.  Simply, that cannot make out a claim for breach of contract.  It also cannot make out a claim of breach of the implied covenant of good faith and fair dealing.  Indeed, it is unclear what "implied"

---

[1] One of the two cases Plaintiff found where a shareholder brought suit based on an alleged breach of corporation's articles references the covenant, *Chokel*.  Plaintiff provides no other support for such a shareholder cause of action.

covenant Plaintiff believes was violated, especially where the vote on proposal 2 was valid and proper under the Articles, the By-Laws, and Pennsylvania law.

Plaintiff cites *Bushway Ice Cream Co. v. Fred H. Bean Co.*, 187 N.E. 537, 540 (Mass. 1933), for the proposition that "[t]hose who become members of the corporation are entitled to assume that faith will be kept with them in observance of the by-laws and to resist infractions of them, and to enforce their rights accordingly."  (Opp. at 9.)  But *Bushway Ice Cream* also makes clear that:

> *the by-laws of a corporation and the controlling statutes, where they cover the subject, must be followed* . . . [as] [o]ne object of the by-laws of a corporation is to define the duties and powers of stockholders and directors with reference to each other and the corporation.

187 N.E. at 539-40 (emphasis added).  And that is exactly the point.  The By-Laws, the Articles, governing Pennsylvania law – all were followed here.  *Bushway Ice Cream*'s admonition that shareholders "are entitled to assume that faith will be kept with them in observance of the by-laws" has thus been followed as well.  A misstatement in a proxy sent to shareholders is not the same as a corporation acting contrary to its governing documents or law, and Plaintiff has not come forward with any law supporting such a theory.  Yet that is the gravamen of Plaintiff's case.

Never mind, Plaintiff says, that the vote on proposal 2 was consistent with Republic's Articles, its By-Laws, and applicable Pennsylvania law.  "[E]ven if facially 'legal,'" Plaintiff argues, Pennsylvania courts have found such "inequitable conduct" actionable.  Hardly.  In *Jewelcor Mgmt., Inc. v. Thistle Grp. Holdings, Co.*, 60 Pa. D. & C.4th 391, 2002 WL 576457 (Com. Pl. 2002), for example, on which Plaintiff relies, at issue was management's decision to reschedule a shareholder meeting, a decision that the court found technically proper under the

governing documents.  The court nonetheless concluded that the board's conduct was "improper and inequitable," "a blatant attempt to manipulate the upcoming Board election and to interfere with [a shareholder's] right to contest the election of [the] directors" in power.  *Id.* at *2-3.  This is because, the court found, the board could not take even permitted action with an intent to manipulate and improperly retain control:

> A corporation's board of directors acts improperly when it manipulates a corporate election to perpetuate its own control of the corporation.  Because the Board's moving the Meeting date amounts to little more than an effort to maintain domination over [the company's] operations, [movant] has a clear right to relief.[2]

*Id.* at *3.  *Jewelcor* couldn't be further from the facts of the case at bar.  There is no allegation of any sort in the Complaint that the misstatement in the proxy was anything more than just that – a misstatement, a mistake.  There is no allegation of any kind of intentional conduct on the part of Republic or its Board, never mind intentional conduct taken with some nefarious or self-serving motive.  Plaintiff does not make these allegations *because he cannot*; that is, the bottom line is that there was an inadvertent mistake in the proxy.  This is not "inequitable conduct," as Plaintiff would have it; it is not "a blatant attempt to manipulate" or "an effort to maintain domination over" Republic.  None of that has been or could have been alleged.  Cases like *Jewelcor* are completely inapposite.  The only other case on which Plaintiff similarly relies is equally far afield and has no application to this case.  *See Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437, 439 (Del. 1971) ("[M]anagement has attempted to utilize the corporate machinery and the Delaware Law for the purpose of perpetuating itself in office; and, to that end, for the purpose of obstructing the legitimate efforts of dissident stockholders in the exercise of their rights to

---

[2] *Jewelcor* involved no claim of breach of articles; it merely granted a preliminary injunction to move the date of the meeting.

undertake a proxy contest against management. These are inequitable purposes, contrary to established principles of corporate democracy.").[3]

## II.    There Is No Claim under 15 Pa.C.S.A. § 1793

Plaintiff's argument with respect to § 1793 is curious, accomplishing nothing more than knocking down a straw man.  Republic did not argue that Traher could not bring a claim under § 1793 because he was not the record owner of the stock.  Instead, Republic explained at length that the manner in which the proposal 2 votes were counted was consistent not merely with the Articles and the By-Laws, but also with the applicable provisions of Pennsylvania corporate law. The upshot of which is not, as Plaintiff misunderstood, that he could not bring a § 1793 claim because he was not the record holder of the stock.  Rather, the point is that § 1793 permits a court to determine "the validity" of a corporation's actions; and, because the action at issue was consistent with Republic's governing documents and applicable law, it was "valid."  As a result, Plaintiff has no claim against Republic under § 1793.

## III.    The Court Can, and Should, Determine that the Vote Was Proper

Plaintiff grasps at straws in asking the Court not to acknowledge that the vote at issue was consistent with Republic's Articles, its By-Laws, and governing Pennsylvania law.  This is understandable – it is a black-and-white question of law of whether the action challenged complied with the terms of these controlling sources, and there is no argument to be made (and

---

[3] Plaintiff attaches a transcript from a settlement hearing in a case in Delaware Chancery Court, *In re Galena Biopharma*, No. 2017-0423-JTL.  No written opinions from this case are available on Westlaw, and Plaintiff has provided none – just a transcript of a settlement hearing.  Plaintiff contends that *Galena* is "materially indistinguishable."  It is unclear why Plaintiff believes this.  While the case apparently dealt with disclosures relating to how votes were counted, it is evident that the *Galena* plaintiff brought different causes of action, such as breach of fiduciary duty (a claim that Traher did not bring), and that there were numerous and repeated inaccurate disclosures (which is also not alleged here).  It is also unclear whether the method of vote counting in *Galena* was, as was the case with Republic, consistent with the corporation's Articles, By-Laws, etc.  Thus, while the judge in this non-controlling case from another jurisdiction makes statements at a settlement hearing about the importance, in his opinion, of accurate disclosures under Delaware law, the relevance of those statements to the facts of this case is not apparent.

Plaintiff makes none) that the Articles, By-Laws, or Pennsylvania law was violated.  That is, as set forth at greater length in its opening brief, the vote tally on proposal 2 was consistent with these strictures and therefore proper.

Plaintiff nonetheless argues that such a determination would be "premature."  (Opp. at 13.)  That is because, according to Plaintiff, the vote at issue "was accomplished through deceit," and "Republic's admission that it deceived shareholders . . . is sufficient to demonstrate corporate wrongdoing."  (*Id.*)  Nonsense.  Nowhere in the Verified Complaint is there any claim that Republic engaged in "deceit"; and Republic has never made any such admission.[4]  To the contrary, the Complaint does not even allege intentional actions on the part of Republic, never mind an intent to "deceive" shareholders – for the simple reason that there is no basis by which Plaintiff could allege this.  The Complaint tacitly concedes that the alleged mistake in the Proxy Statement was just that – a mistake.  Because it was.

There are no variables left for determination with respect to whether Plaintiff has pleaded the elements of his causes of action.  As to his claim for breach of Republic's articles, Plaintiff has identified the wrongdoing alleged, and the Articles themselves are before the Court, which can determine as a matter of law whether or not what happened was consistent with the terms of the Articles.  As to the § 1793 and declaratory judgment claim, the math is similar.  The validity of corporate actions is determined by the corporation's controlling documents and governing law.  The Court can determine whether the wrongdoing alleged was inconsistent with any of these sources (Articles, By-Laws, Pennsylvania corporate law) and, if not, it can dismiss these claims.

---

[4] Of course, a plaintiff cannot amend the averments of his complaint in an opposition brief to a motion to dismiss. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988) ("[I]t is axiomatic that the complaint may not be amended by [a] brief[ ] in opposition to a motion to dismiss.").

Plaintiff argues that the misstatement in the Proxy Statement should prevent the Court from determining whether the Articles were breached or whether the corporate action at issue was valid. But this makes no sense. Unless Plaintiff could somehow argue that a misstatement in a Proxy Statement could somehow alter or modify the terms of a corporation's Articles, its By-Laws, or governing Pennsylvania law, the Proxy Statement (and its misstatement) are simply not relevant to whether Plaintiff's causes of action are viable.

Of course, Plaintiff could have brought a federal securities claim for a misrepresentation in a proxy statement. But the statute of limitations on such a claim had run. Or, Plaintiff could have alleged fraud or some other intentional tort by which Republic and its board intentionally misled shareholders for their own benefit and gain. But not only can Plaintiff not claim reliance, he also cannot allege any ill-intentioned act or motive on the part of Republic or its board – anything more than an inadvertent mistake, really – because there was none, as he knows.

All of which is to say that Plaintiff and his attorneys elected to bring claims for breach of the articles, determination of validity of corporation action under §1793, and a declaration to the same effect. He is unable to prevail on any of these causes of action as a matter of law, and the Court has all the information it needs now to make this determination and dismiss these causes of action.

## IV.    **Plaintiff Lacks Standing**

Plaintiff claims that he need not show particularized injury because of state law decisions referencing the importance of the right of the shareholder vote. This is mistaken for several reasons.

In federal court, the U.S. Constitution imposes the requirement that a plaintiff establish standing to pursue his claims, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), which

includes having suffered "a palpable and distinct harm," *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009).  Surprisingly, not a single case cited by Plaintiff in his effort to demonstrate standing is from federal court, and thus in none of those cases was Article III's case-or-controversy requirement at issue.  However "fundamental," "sacrosanct," and "basic" the right of a shareholder to vote may be, this does not excuse Plaintiff from showing something more than "[v]ague and conclusory allegations of harm," *Arkansas Right to Life State Political Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998), "an injury to himself that is 'distinct and palpable,' as distinguished from merely 'abstract,'" *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011), in order to advance claims as a Plaintiff in federal court.  Plaintiff has not done (and cannot do) this.  Instead, he confuses the wrongdoing alleged with the harm he claims to have suffered as a result:  "Traher has been harmed . . . because the Articles were amended through an improperly conducted shareholder vote."  (Opp. at 14.)  But the allegedly improper vote is the wrongdoing he claims; it does not answer the question whether he suffered injury as a result.  (And he did not.)

Even in the state law cases on which Plaintiff relies, harm distinct from the wrongdoing alleged is specified.  In *Reifsnyder v. Pittsburgh Outdoor Advert. Co.*, 173 A.2d 319, 322 (Pa. 1961), for example, plaintiff alleged shareholder vote impropriety, but he *also* set forth how he had been harmed as a result:  "The aggrieved shareholder . . . would . . . be preventing the dilution of his own votes by challenging and disqualifying improper votes."  *Id.*  Traher has made (and could make) no comparable claim of having been "aggrieved."

Plaintiff nonetheless insists that "case after case has held that voting subject to a misleading proxy constitutes harm to shareholders."  (Opp. at 15.)  The cases on which he relies say no such thing.  Plaintiff cites *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 333 (Del.

1993), for the proposition that Delaware has "a virtual per se rule of damages for breach of the fiduciary duty of disclosure."  It is unclear what bearing Delaware law might have on whether the federal Constitutional minimum of standing has been met.  Further, whatever "per se rule of damages" might apply to a plaintiff alleging a breach of fiduciary duty, such rule can have no application where, as here, no claim of breach of fiduciary duty has been (or could have been) made.  Regardless, *Tri-Star* is clear that the loss at issue is neither hypothetical nor abstract; "the alleged loss suffered by the plaintiffs here is [that] the nondisclosure purportedly led to a diminution in the value of the plaintiffs' shares."  *Id.* at 334.  Again, Traher has made no such claim, nor could he.

**V.**   **The Court Should Dismiss Plaintiff's Request for Attorney's Fees**

In the alternative, the Court should dismiss Plaintiff's request for attorney's fees. Plaintiff complains of procedural irregularity, but it has been long established that "[a] court may grant a motion to dismiss in accordance with Fed.R.Civ.P. 12(b)(6) if it appears beyond a doubt that the plaintiff can prove no facts *to support the relief requested*."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  That is the case here.  There are no facts supporting an award of one of the forms of relief requested – an award of attorney's fees.  It is therefore subject to dismissal.

An award of counsel fees can be justified where "the 'common benefit' . . . render[s] a substantial service to all members of the class by correcting an abuse prejudicial to an essential right."  *Gonzalez v. Owens Corning Sales*, LLC, 2019 WL 582532, at *3 (W.D. Pa. Feb. 13, 2019).  Plaintiff's rhetoric aside, this case boils down to a shareholder vote consistent with Republic's Articles, By-Laws, and governing Pennsylvania law.  Plaintiff's sole complaint is a misstatement in a Proxy Statement concerning how votes would be tallied, a misstatement that is not alleged in the Verified Complaint to be anything other than inadvertent, and a misstatement

on which Plaintiff does not claim he relied.  This is nothing like litigation "correcting an abuse prejudicial to an essential right."  It is instead an attorney's-fees-driven attempt to urge the Court to ignore the facts as "premature" and force an injury-less alleged mistake into causes of action they do not support.  Plaintiff has not alleged abusive and prejudicial wrongs that he seeks to remedy for the benefit of the greater good.  He has instead done nothing more than identify a document containing an inadvertent mistake that he has not even alleged he read.  An award of attorney's fees would not appropriate in this matter.[5]

**VI.**   **Conclusion**

For the foregoing reasons, in addition to those in its prior submission, Defendant, Republic First Bancorp, Inc., respectfully requests that the Court dismiss this action with prejudice; or, in the alternative, strike Plaintiff's request for attorney's fees.

Respectfully submitted,

 /s/ George M. Vinci, Jr.
George M. Vinci, Jr., Esquire
Neal R. Troum, Esquire
Spector Gadon Rosen Vinci P.C.
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8870
(215) 241-8844 (fax)
gvinci@sgrvlaw.com,
ntroum@sgrvlaw.com

Dated:  June 30, 2019

*Attorneys for Defendant*
*Republic First Bancorp, Inc.*

---

[5] Plaintiff argues that the Court should not consider the previous Purcell demand letter and the SLC response and "should disregard these documents."  (Opp. at 6 n.4.)  Plaintiff has overlooked that neither document was attached to Republic's motion or submitted to the Court.  Rather, as Republic explained in its prior brief, they form part of the background for this suit and provide context for the unusual claims to which Plaintiff was forced to resort.  Contrary to Plaintiff's mistaken assertion, Republic has not argued that Traher's claims are derivative.  Republic has merely explained to the Court why traditional shareholder claims like breach of fiduciary duty are unavailable to Plaintiff, who therefore must seek to squeeze his facts into causes of action into which they do not fit.

## <u>CERTIFICATE OF SERVICE</u>

I, Neal R. Troum, hereby certify that a true and correct copy was filed with the Court's

ECF electronic case filing system, which served it upon all counsel of record.

Dated:  June 30, 2019                          /s/ Neal R. Troum
                                                        Neal R. Troum